UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LEONARD HADLEY,

    Plaintiff,

    v.

ASTRAZENECA PHARMACEUTICALS PLC,
ASTRAZENECA PLC, and U.S. GOVERNMENT
FOOD AND DRUG ADMINISTRATION,

    Defendants.

Case No. 18-cv-1068-JPG-DGW

## **MEMORANDUM AND ORDER**

**I.    Procedural History**

Plaintiff Leonard Hadley, who appears *pro se*, filed this case in May 2018 asserting that he was injured when he took Seroquel, a psychotropic drug he alleges was developed and manufactured by defendants AstraZenica Pharmaceuticals PLC and AstraZenica PLC and was approved by the defendant United States Government Food and Drug Administration ("FDA"). He believes his ingestion of Seroquel from 2002 to 2008 caused him to develop Phase 1 Brugada syndrome, a heart condition that results in disruption of the heart's normal rhythm. Nat'l Institutes of Health, U.S. Nat'l Library of Medicine, *Brugada syndrome* (Sept. 4, 2018), https://ghr.nlm.nih.gov/condition/brugada-syndrome#definition. He was diagnosed with Brugada syndrome in 2008. As a consequence of the disease, Hadley had to have a combination defibrillator/pacemaker implanted in his chest, has suffered extreme pain, and is constantly at risk of death. He believes Seroquel was defective because it did not come with an adequate warning about the cardiac risks from taking the medication.

Shortly after filing this lawsuit, Hadley moved for summary judgment against all of the defendants (Doc. 10). In his motion, Hadley points to lawsuits AstraZenica (he does not specify

which AstraZenica defendant) settled with the United States Department of Justice in 2010 and with a number of states in 2011 for off-label marketing and inadequate labeling of Seroquel. Hadley believes that his undisputed ingestion of Seroquel and his development of Brugada syndrome, along with the FDA's conclusion that the Seroquel labeling did not adequately warn of the risk of Brugada syndrome and AstraZenica's settlement of the aforementioned lawsuits, entitled him to judgment as a matter of law in this case. He seeks money damages from the AstraZenica defendants and an injunction for the FDA to require a warning about Brugada syndrome on the Seroquel label.

Before responding to Hadley's summary judgment motion, AstraZenica PLC filed a motion to dismiss (Docs. 13 & 15), which the Court has construed as a motion for summary judgment, arguing that Hadley's purported 2011 settlement, release and agreed judgment in a different Seroquel products liability suit against it and other AstraZenica defendants is *res judicata* for this lawsuit. *See* Confidential Settlement and Indemnification Agreement and Release/Covenant Not to Sue ("Settlement/Release") (Doc. 15-1); *Scott v. AstraZenica Pharmaceuticals, LP*, No. 2010-77447 (189th Jud. Dist. Harris Cty., Tex., Oct. 20, 2011) (Doc. 18-2). Alternatively, it argues that Hadley's current suit is barred by the Illinois two-year statute of limitations for personal injury actions, 735 ILCS 5/13-202; that AstraZenica Pharmaceuticals PLC should be dismissed because there is no such entity; that Hadley has failed to plead facts plausibly suggesting a right to relief; and that AstraZenica PLC should be dismissed because it does not design, manufacture, distribute or sell pharmaceutical products. It further asks the Court to strike Hadley's prayer for punitive damages as improper under Illinois law. In support of its motion, AstraZenica PLC filed, with the Court's permission, its memorandum (Doc. 15) under seal because it discussed, quoted and attached the confidential settlement agreement

purportedly reached with Hadley in the prior lawsuit.

In Hadley's response to AstraZenica PLC's motion (Docs. 19 & 20), he denies that he ever executed any settlement agreement and release of the AstraZenica defendants and denies that his legal name—Leonard Eugene Hadley—and/or signature appear on the documents submitted in support of the defendants' *res judicata* argument. In support of this position, he has filed copies of numerous personal documents: his birth certificate, his driver's license, a 2013 report to law enforcement of identity theft, correspondence with a creditor about identity theft, and a certificate of marriage registration. He further claims the statute of limitations for this case has not run because the limitations period has been tolled since 1976, when he became legally disabled. Hadley maintains he has stated a claim and properly requested punitive damages. Hadley filed part of his response (Doc. 20) under seal.

In its reply in support of its summary judgment motion (Doc. 22), AstraZenica PLC calls into question Hadley's unsupported claim that he is legally disabled in a way that would toll the statute of limitations. It also points to documentary evidence supporting the inference that Hadley is the same person who settled the prior Seroquel lawsuit. Again with the Court's permission, AstraZenica PLC filed its submission under seal.

At the same time AstraZeneca PLC filed its reply in support of its own summary judgment motion, it responded to Hadley's summary judgment motion (Doc. 23), also under seal with the Court's permission. AstraZenica PLC's brief reiterates the arguments made in its summary judgment motion.

After briefing on the summary judgment motions was complete, Hadley filed a motion to strike in which he objects to AstraZenica PLC's filings under seal (Doc. 27). He contends that because he did not sign the Settlement/Release, no privacy or confidentiality interest exists and

the public has a right to open records of the Court. He asks that all of AstraZenica PLC's filings suggesting he settled the previous lawsuit be stricken. AstraZenica PLC has responded to the motion (Doc. 28).

## II. Motion to Strike (Doc. 27)

The Court first addresses Hadley's motion to strike. The Court rejects his request to strike AstraZenica PLC's filings simply because he believes they do not put forth a meritorious defense. Striking is warranted under Federal Rule of Civil Procedure 12(f), which has often been applied beyond its strict terms to filings other than pleadings, where a pleading presents an insufficient defense or if material is "redundant, immaterial, impertinent, or scandalous." This Court and others have held that a party must show prejudice to succeed on a motion to strike. *See, e.g., Anderson v. Board of Educ. of Chi.*, 169 F. Supp. 2d 864, 867 (N.D. Ill. 2001); *see also Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). The Court should not strike matter pursuant to Rule 12(f) "unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (3d ed.); *accord Anderson*, 169 F. Supp. 2d at 867-68. The burden on a motion to strike is upon the moving party. *See Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs.*, 2 F. Supp. 2d 1028, 1033 (N.D. Ill. 1998). Hadley has not pointed to any redundant, immaterial, impertinent or scandalous material in AstraZenica PLC's filings and has not shown that, if proven, its argument presents an insufficient defense. Nor has he pointed to any prejudice he will suffer if AstraZenica PLC's filings are not stricken. Instead, he merely disagrees with the arguments AstraZenica PLC advances. This is not a sufficient reason to strike its filings.

Hadley's objections with respect to sealing documents meet with more success. Judicial proceedings leading to a final decision and materials on which a judicial decision rests are presumptively in the public domain. *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006), *overruled in part on other grounds by TRP LLC v. Orix Real Estate Capital, Inc.*, 827 F.3d 689, 692 (7th Cir. 2016); *Methodist Hosps. v. Sullivan*, 91 F.3d 1026, 1031 (7th Cir. 1996); *cf. Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994). There is a common law right of access to documents filed in litigation. *Methodist Hosps.*, 91 F.3d at 1031; *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-99 (1978). "Public scrutiny over the court system serves to (1) promote community respect for the rule of law, (2) provide a check on the activities of judges and litigants, and (3) foster more accurate fact finding." *Grove Fresh*, 24 F.3d at 897; *see generally Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). "Though its original inception was in the realm of criminal proceedings, the right of access has since been extended to civil proceedings because the contribution of publicity is just as important there." *Grove Fresh*, 24 F.3d at 897. The common law holds that "court files and documents should be open to the public unless the court finds that its records are being used for improper purposes." *Grove Fresh*, 24 F.3d at 897. There are exceptions, however, to the general rule of access to court documents. For example, a court may seal records to protect trade secrets or other kinds of information deserving of long-term confidentiality. *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002); *see Nixon*, 435 U.S. at 598 (to protect business information that could harm litigant's competitive standing).

In addition to this common law right of access to court documents, there is a constitutional right of access to court records. *Grove Fresh*, 24 F.3d at 897; *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603 (1982). "The First Amendment presumes that there is

5

a right of access to proceedings and documents which have historically been open to the public and where the disclosure of which would serve a significant role in the functioning of the process in question." *Grove Fresh*, 24 F.3d at 897 (internal quotations omitted). "This presumption is rebuttable upon demonstration that suppression 'is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Grove Fresh*, 24 F.3d at 897 (quoting *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984)). "[W]hen a court finds that the presumption of access has been rebutted by some countervailing interest, that 'interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.'" *Grove Fresh*, 24 F.3d at 898 (quoting *Press Enter.*, 464 U.S. at 510).

In its initial review of AstraZenica PLC's filings, the Court noted the reference to and attachment of the confidential Settlement/Release, and it allowed certain documents to be sealed to preserve the confidentiality of the settlement that had been bargained for in that agreement. However, upon further review, and in light of the presumption that Court records are in the public domain, the Court revisits that decision.

The Court first addresses the Settlement/Release proffered by AstraZenica PLC (Ex. 2, Doc. 15-1). As explained below, the Court's decision in this case does not in any way rest on the content of that document. Therefore, the public's interest in access to that document is negligible since it would add little or nothing to the public's understanding of the Court's decision in this case. Therefore, the parties' interest in confidentiality is greater than the public's interest in access to the document, and the document should remain under seal.

With respect to AstraZenica PLC's briefs (Docs. 15, 22 & 23) that are sealed because they refer to that Settlement/Release, wholesale sealing simply because one part refers to the confidential Settlement/Release is not warranted. The Court notes that most parts of those briefs

advance arguments unrelated to the Settlement/Release so cannot support the decision to seal. As to the parts that reference the Settlement/Release, they reveal some details that are already revealed in unsealed filings such as the mere existence of the Settlement/Release. However, they also refer to and quote the Settlement/Release which, as the Court has noted in the previous paragraph, reveals nothing about the Court's decision-making process. The Court will therefore order AstraZenica PLC to refile its sealed briefs (Docs. 15, 22 & 23) with redactions of the parts that reveal specific terms of the Settlement/Release and any personal information about Hadley (*e.g.*, his social security number and date of birth) wherever it appears.

As for the sworn declaration attached to two of those briefs (Docs. 22-3 & 23-1), there is no indication there was any expectation of confidentiality with respect to this document. Therefore, even though there is likewise little or no public interest in access to the document, sealing is not justified. Accordingly, the Court will order AstraZenica PLC to refile this document (Docs. 22-3 & 23-1) not under seal.

Hadley himself has filed documents under seal without leave of the Court (Doc. 20). The Court has reviewed Hadley's brief in response to AstraZenica PLC's summary judgment motion (Doc. 20, pp. 1-6) and finds it contains no confidential information not already asserted by Hadley in his other public filings. Therefore, the Court will order it unsealed. As a courtesy to Hadley, who is proceeding *pro se*, the Court will direct the Clerk of Court to refile his response brief for him not under seal.

As for the exhibits Hadley has filed under seal, the Court finds that most of those documents (Doc. 20, pp. 7-20) contain information that is properly sealed pursuant to Local Rule 5.1. Furthermore, the Court has not relied on any of Hadley's exhibits in formulating its decision, so the public has little or no interest in access to these documents. The Court will

7

therefore allow them to remain under seal.[1]

The Court believes this decision regarding sealing of documents is necessary to preserve the confidentiality AstraZenica PLC bargained for in obtaining the Settlement/Release and the privacy of Hadley's personal information. This order allowing sealing is narrowly tailored to serve the parties' interests in confidentiality without impairing the ability of the public to understand and oversee the workings of the Court.

### III. Motions for Summary Judgment

The Court now turns to the parties' respective motions for summary judgment. Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013).

    A.    <u>Hadley's Motion</u>

As a plaintiff with the burden of persuasion on his claim at trial, Hadley must "lay out the elements of the claim, cite the facts which [he] believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant

---

[1] The remaining two pages of exhibits contain a copy of 735 ILCS 5/13-211, which is publicly available, and an unexplained page showing a Google search, which the Court has not considered in its decision.

8

on the claim." *Hotel 71 Mezz Lender LLC v. National Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *accord Felix v. Wisconsin Dep't of Transp.*, 828 F.3d 560, 570 (7th Cir. 2016).

To succeed on his products liability claim for failure to warn, Hadley must prove (1) that the defendant did not disclose the product's unreasonably dangerous condition which it knew or should have known about and which the average consumer would not have known about and (2) that the presence of an adequate warning would have prevented his injuries. *Sollami v. Eaton*, 772 N.E.2d 215, 219 (Ill. 2002); *Norabuena v. Medtronic, Inc.*, 86 N.E.3d 1198, 1207 (Ill. App. Ct. 2017); *Solis v. BASF Corp.*, 979 N.E.2d 419, 439 (Ill. App. Ct. 2012). In this case, that means Hadley must establish that the defendants knew of the dangerous propensities of Seroquel to cause cardiac problems like Brugada syndrome, that they gave inadequate warnings, that the lack of warning caused Hadley to ingest Seroquel when he otherwise would not have, and that he suffered injury from taking Seroquel.

Causation of harm by the product, an essential element of Hadley's claim, is generally a complicated issue to prove, especially when, as here, the question includes whether use of the product with the allegedly inadequate warnings actually caused the harm suffered by the plaintiff. Rather than providing any scientific or other reliable evidence that Seroquel caused him to develop Brugada syndrome, Hadley relies on the *post hoc ergo proper hoc* faulty theory of causation—that is, because one event occurred after another event, the earlier even must have caused the latter. Courts have long rejected such fallacious reasoning unless there is additional evidence of causation. *Rittler v. Industrial Comm'n*, 184 N.E. 654, 660 (Ill. 1933) ("*Post hoc ergo propter hoc* is a fallacious argument."); *Hussung v. Patel*, 861 N.E.2d 678, 686 (Ill. App. Ct. 2007) (citing with approval other jurisdictions that have held a "temporal association alone does not suffice to show a causal link because a mere temporal coincidence between two events

9

does not necessarily entail a substantial causal relation between them"; internal citations and quotations omitted).

For this reason, the Court finds Hadley has failed to carry his initial burden of production on summary judgment to establish that the record is so one-sided that no reasonable jury could find for the defendants on the issue of causation, an essential element of Hadley's case.

B.      AstraZenica PLC's Motion

1.      AstraZenica PLC

The Court turns first to AstraZenica PLC's statute of limitations argument.[2] Because the Court finds this argument has merit, it need not address its other arguments in support of its motion. AstraZenica PLC argues that Hadley's claims are governed by the limitations law of Illinois, and Hadley does not dispute this. Therefore, Court assumes for the purposes of this motion that Illinois law applies.[3]

Under Illinois law, claims for personal injury are subject to the two-year statute of limitations found in 735 ILCS 5/13-202. *Golla v. General Motors Corp.,* 657 N.E.2d 894, 897 (Ill. 1995). Generally, a personal injury cause of action accrues, and the statute of limitations begins to run, when the plaintiff suffers the injury. *Id.* at 898. This moment is fairly easy to identify when there is a sudden, traumatic injury, but less so when the injury is not immediately apparent. To address latent injuries, the discovery rule "postpone[s] the commencement of the

---

[2] While the Court must always address jurisdictional arguments before substantive arguments, it need not consider AstraZenica PLC's *res judicata* argument first because, despite AstraZenica PLC's assertions otherwise, it does not concern the Court's jurisdiction to hear the case. *See Elder v. Illinois Dep't of Human Servs.*, No. 99-3852, 215 F.3d 1329, 2000 WL 689179, at *2 (7th Cir. May 22, 2000) (noting *res judicata* is not jurisdictional). It simply presents an alternate basis for a decision on the merits.

[3] Hadley claims to have ingested Seroquel while in the West Valley Detention Center, which is located in San Bernardino, California. He now lives in Illinois.

relevant statute of limitations until the injured plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Id.* It does not, however, postpone the running of the limitations period until the plaintiff knows the *full extent* of his injuries so long as he knew earlier that he was injured in some way. *Id.* at 900.

Illinois law also provides a statute of repose for products liability actions:

> 12 years from the date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller, whichever period expires earlier, of any product unit that is claimed to have injured or damaged the plaintiff,

unless the defendant has agreed to a longer period. 735 ILCS 5/13-213(b). Illinois law also provides an exception to the statute of repose. *Allstate Ins. Co. v. Menards, Inc.*, 782 N.E.2d 258, 263 (Ill. 2002) (citing *Davis v. Toshiba Mach. Co., Am.,* 710 N.E.2d 399, 401 (Ill. 1999)). That exception, found in 735 ILCS 5/13-213(d), provides that, if a plaintiff suffers an injury within the ten- or twelve-year repose period, he may sue within two years of when he knew or should have known of his injury, so long as that date is not more than eight years from the date the injury occurred. *See Davis*, 710 N.E.2d at 401.

The relevant dates in this case are: (1) 2002, when Hadley began taking Seroquel; (2) 2008, when he was diagnosed with Brugada syndrome; and (3) 2018, when he filed this lawsuit.[4]

Hadley did not file this lawsuit within the two-year statute of limitations for personal injury set forth in 735 ILCS 5/13-202. Although the date of his alleged injury is unclear, the most recent date he knew or should have known of that injury was 2008 when he was diagnosed with Brugada syndrome. To be within the statute of limitations, he would have had to have filed

---

[4] It is sufficient to discuss the relevant dates generally in terms of years rather than specific days. Had this case turned on the specific date of an event, the Court would be more specific.

his lawsuit within two years of his diagnosis, that is, in or before 2010. He filed this suit eight years beyond the expiration of the statute of limitations.

Even if the discovery rule had extended his limitations period, he failed to file this lawsuit within the statute of repose set forth in 735 ILCS 5/13-213(b). The first delivery of Seroquel to Hadley occurred in 2002, so to be within the statute of repose, Hadley would have had to have filed his lawsuit within ten years of that delivery, that is, in or before 2012. He filed this suit six years beyond the expiration of the statute of repose.

Finally, Hadley did not file this lawsuit within the exception to the statute of repose set forth in 735 ILCS 5/13-213(d). While his diagnosis of Brugada syndrome occurred in 2008, within the statute of repose, he knew that he was injured at that time because a doctor told him he had Brugada syndrome. Consequently, he had two years from that time to file a lawsuit within the exception to the statute of repose, that is, in or before 2010. However, again, he filed this lawsuit eight years too late to meet that deadline.

Hadley does not dispute that his suit is untimely based on the events and limitations periods set forth above. Instead, he seizes on 735 ILCS 5/13-211(a) and the final provision of 735 ILCS 5/13-213(d) to argue that his disability has prevented the aforementioned limitations periods from running. 735 ILCS 5/13-211(a) states, "If the person entitled to bring an action, specified in Sections 13-201 through 13-210 of this Code [*e.g.*, a personal injury action], at the time the cause of action accrued, is . . . under a legal disability, then he or she may bring the action within 2 years after . . . the disability is removed." Similarly, the final provision of 735 ILCS 5/13-213(d) states, "In any such case, if the person entitled to bring the action was, at the time the personal injury, . . . under a legal disability, then the period of limitations does not begin to run until . . . the disability is removed." He believes, and states in his sworn statement, that he

12

is legally disabled and has been since 1976 when he suffered a gunshot wound and became partially paralyzed. Therefore, he believes his statute of limitations has not begun to run because he remains physically disabled.

Various Illinois courts have opined on what "legal disability" means for limitations purposes. One court has held, "A person suffers from a 'legal disability' where he or she is entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his [or her] estate or financial affairs." *Hochbaum v. Casiano*, 686 N.E.2d 626, 631 (Ill. App. Ct. 1997) (internal citation omitted). That court further noted that a plaintiff is not legally disabled if he "can comprehend the nature of the injury and its implications." *Id.* One Illinois trial court instructed a jury that a "legally disabled" person "was incapable of managing her person or property and could not comprehend her rights or the nature of the act giving rise to her cause of action." *Tardi v. Henry*, 571 N.E.2d 1020, 1028 (Ill. App. Ct. 1991). Whatever the precise definition of "legal disability" is, it is clear that, in the limitations context, it concerns the plaintiff's mental competence, comprehension and ability to communicate and requires something other than a mere physical disability.

Whether someone is under a "legal disability" is a conclusion of law, not a statement of fact, although on summary judgment, assertions of fact regarding a plaintiff's abilities and understanding can be sufficient to support a finding of legal disability. Here, however, Hadley simply asserts the legal conclusion that he has been "legally disabled" since 1976 without any assertions of fact that would support such a legal conclusion. The Court believes he may be referring to his physical disability―partial paralysis from a gunshot wound. However, that kind of physical disability is not sufficient to establish that he is "legally disabled" under 735 ILCS 5/13-211 or -213. Indeed, Hadley statement indicates that his "legal disability" continues today,

13

yet the record reflect that he is sound in the areas of mental competence, comprehension and communication. He clearly understands his injuries and the issues in this lawsuit and is able to communicate his thoughts and arguments well. There is simply no evidence from which a reasonable jury could conclude that Hadley is, or has ever been, under a "legal disability" for limitations purposes.

For these reasons, the Court finds AstraZenica PLC is entitled to summary judgment on statute of limitations grounds.

### 2. AstraZenica Pharmaceuticals PLC

AstraZenica PLC also argues that the Court must grant summary judgment for AstraZenica Pharmaceuticals PLC because there is no such entity. It has presented an affidavit from its deputy general counsel in support of this position. Hadley disputes this fact but has provided no evidence that AstraZeneca Pharmaceuticals PLC exists. As there is evidence to support only one side of this question, there is no need for a trial, and the Court will dismiss AstraZenica Pharmaceuticals PLC without prejudice.[5]

## IV. Conclusion

For the foregoing reasons, the Court:

- **DENIES** Hadley's motion for summary judgment (Doc. 10);

- **GRANTS** AstraZenica PLC's motion for summary judgment, originally filed as a motion to dismiss (Doc. 13);

- **DISMISSES** AstraZenica Pharmaceuticals PLC **without prejudice**;

- **GRANTS in part** and **DENIES in part** Hadley's motion to strike (Doc. 27);

- **ORDERS** AstraZenica PLC to refile the following documents not under seal on or before October 5, 2018:

---

[5] Even if AstraZenica Pharmaceuticals PLC existed, the Court would dispose of the claims against it for the same reason it grants summary judgment for AstraZeneca PLC.

- its sealed briefs (Docs. 15, 22 & 23) with redactions of the parts that reveal specific terms of the Settlement/Release and any personal information about Hadley (*e.g.*, his social security number and date of birth) wherever it appears; and

- one copy of the sealed sworn declaration (Docs. 22-3 & 23-1);

These documents should be filed using the CM/ECF event "Exhibit" and should be linked to the motion to which they pertain;

- **DIRECTS** the Clerk of Court to refile Hadley's response brief (Doc. 20, pp. 1-6) not under seal as an Exhibit linked to his Response (Doc. 19). The exhibits to Hadley's response will remain under seal; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

AstraZenica PLC and AstraZenica Pharmaceuticals PLC are terminated as parties to this action.

**IT IS SO ORDERED.**
**DATED: September 19, 2018**

                                      s/ J. Phil Gilbert
                                      **J. PHIL GILBERT**
                                      **DISTRICT JUDGE**